1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   VINCENT ERIC MORRIS,

11            Petitioner,                    No. 2:11-cv-1051 TLN DAD

12        vs.

13   PEOPLE OF THE STATE OF
     CALIFORNIA,
14
              Respondent.              FINDINGS & RECOMMENDATIONS
15

16   _____/

17            Petitioner, a state prisoner, is proceeding pro se in this action on his third

18   amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (ECF No. 39.)

19   Therein, he challenges a 2009 judgment of convictions entered against him in the San Joaquin

20   County Superior Court on charges of first degree robbery and first degree burglary.  After careful

21   consideration of the record and the applicable law, the undersigned will recommend that the

22   petition be denied.

23                        PROCEDURAL BACKGROUND

24            On October 3, 2008, an Information filed in the San Joaquin County Superior

25   Court charged petitioner in counts one and two with first degree home invasion robbery (Cal.

26   Penal Code § 211) and in count three with first degree residential burglary (Cal. Penal Code §

                                          1

459).  As to each count, the Information alleged that a principal was armed with a firearm (Cal.

Penal Code § 12022(d)).  (1 Clerk's Transcript ("CT") at 75-77.)  The Information also alleged,

for sentencing enhancement purposes, that petitioner had previously incurred various prior felony

convictions and that he had served a prior prison term (Cal. Penal Code §§ 667, 667.5(b),

1170.12.)  (Id. at 78-80.)

        A jury found petitioner guilty on all three counts alleged and found true the armed

principal allegations.  (Lodged Document ("LD") 3 at 1.[1])  Thereafter, petitioner admitted that

the allegations that he had suffered a prior strike conviction, a prior serious felony conviction,

and had served a prior prison term were true.  (Id.)  The trial court struck the prior prison term

allegation and sentenced petitioner to an aggregate term of eighteen years and four months in

state prison.  (Id.)

        Petitioner appealed from the judgment of conviction to the California Court of

Appeal for the Third Appellate District.  (LD 1-2.)  The state appellate court ordered a

typographical error in petitioner's abstract of judgment corrected and in all other respects

affirmed petitioner's judgment of conviction and sentence.  (LD 3 at 2.)

        On January 19, 2011, petitioner presented a petition for review to the California

Supreme Court.  (LD 4 .)  On February 23, 2011, the California Supreme Court denied review.

(Id.)

        Thereafter, petitioner filed three petitions for writ of habeas corpus in the San

Joaquin County Superior Court.  (LD 5, 7, 9.)  Each was denied in a written decision.  (LD 6, 8,

10.)  Petitioner also filed three petitions for writ of habeas corpus in the California Court of

Appeal.  (LD 15, 17, 19.)  Each was summarily denied.  (LD 16, 18, 20.)  Petitioner filed three

petitions for writ of habeas corpus in the California Supreme Court.  (LD 21, 23, 25.)  On

February 22, 2012, each was summarily denied.  (LD 22, 24, 26.)

---

[1] See Respondent's Notices of Lodging Document in Paper (ECF Nos. 20, 24, 28, 45).

1    Petitioner filed his original federal habeas petition on April 19, 2011. (ECF No.

2  1.)  As noted above, in this action petitioner now proceeds on his third amended petition filed

3  July 27, 2012.  (ECF No. 39.)  Therein, petitioner presents the following six grounds for relief:

4  (1) The Stockton Police Department failed to perform an adequate investigation in violation of

5  petitioner's right to equal protection and due process; (2) his trial counsel rendered ineffective

6  assistance; (3) A laptop computer admitted into evidence at his trial was seized in an

7  unconstitutional search and seizure in violation of petitioner's constitutional rights; (4) his

8  appellate counsel rendered ineffective assistance in failing to raise the issue of trial counsel's

9  ineffective assistance; (5) his appellate counsel rendered ineffective assistance in failing to

10  challenge the sentence imposed; (6) his sentence constitutes cruel and unusual punishment.

11    Below the court will set forth the factual background with respect to petitioner's

12  claims for federal habeas relief and then address each of those claims in turn.

13                                 FACTUAL BACKGROUND

14    The California Court of Appeal for the Third Appellate District, summarized the

15  facts underlying petitioner's convictions in an unpublished memorandum and opinion as follows:

16    Ralph Mason testified that on August 31, 2008, he lived in an
       apartment with Lisa Keovongxay, where he was robbed by
17    defendant.  Previously, Mason had told defendant he was looking
       for a cell phone, and defendant said he would let Mason know if he
18    came across one.  Late on the night of the robbery, defendant came
       to Mason's apartment with another man, who had a gun.  As
19    Mason struggled for the gun, defendant punched him in the temple,
       knocking him down.  The other man grabbed a laptop and two cell
20    phones, and demanded money from Keovongxay, while defendant
       watched Mason.  Mason told the other man where Keovongxay's
21    purse was, and that man took about $200 and the purse.  The
       robbers also took a PSP video game.  When the robbers left,
22    Mason went to a neighbor's house to call his brother, rather than
       the police, because he was afraid, but after defendant knocked on
23    his door several hours later, Mason called the police.

24    Mason was impeached with two prior felony convictions,
       possession for sale of methamphetamine and unlawful taking of a
25    vehicle.  Mason denied that defendant came to the apartment to
       buy narcotics.  Mason claimed that a man had threatened him to

26  /////

                                            3

discourage him from testifying and that Mason had reported this to the police.  Before trial, the laptop was recovered.

Keovongxay gave a similar account but testified defendant and Mason spoke for several minutes by the door before the second man ran in.  At one point, the second man's bandanna fell, and she recognized him as "Jo-Jo," her brother's friend.  She was impeached with a misdemeanor conviction for loitering with the intent to commit prostitution.  She denied there were drugs in the apartment and that defendant came to buy drugs.

Detective Anthony DeSimone testified that Mason told him one of the robbers was the brother of someone named Fred, and by searching through a database he identified a photograph of Fredrick Morris, and this led to a picture of defendant, who[m] Mason identified as the man who had punched him.  Detective DeSimone then created a photographic lineup, and Keovongxay picked out defendant's photograph.

Keovongxay gave the detective the name "Jo-Jo" as the second man and identified a photograph of Christopher Dixon.  Dixon had already pled guilty to residential robbery and assault with a firearm but refused to testify about the incident.  Dixon testified at defendant's trial that he was the only perpetrator and he denied knowing defendant.

Officer Mitch Tiner testified that he and other officers went to a home in Stockton to arrest defendant and found the laptop in defendant's bedroom.

The defense argued the victims were lying to cover up a drug operation, pointing out inconsistent and implausible parts of their stories, and stating, "only dope dealers open their house at 11:00 p.m."  The defense also argued the victims were angry with defendant because "he did nothing to stop" Dixon from robbing them, as was defendant's right under the law, which "does not require you to put yourself in danger to help anybody."

After the guilty verdicts on the robbery count were read, defendant interrupted and said he wanted to testify.  After the jurors left the courtroom to complete the burglary verdict, defendant stated he had wanted to testify "from the git-go."  Later as the trial court was taking defendant's admission to the priors, defendant complained "Right now, I don't even have no attorney.  I need rights.  You all get all of them."  As indicated the trial court sentenced defendant to prison for 18 years and 4 months.

(LD 3 at 1-4.)

/////

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision.  Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640

5

1  (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

2  grant the writ if the state court identifies the correct governing legal principle from the Supreme

3  Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]

4  Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360

5  F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

6  simply because that court concludes in its independent judgment that the relevant state-court

7  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

8  application must also be unreasonable." Williams, 529 U.S. at 412.  See also Schriro v.

9  Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal

10  habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

11  the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

12  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

13  the state court's decision." Harrington v. Richter, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011)

14  (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

15  obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

16  ruling on the claim being presented in federal court was so lacking in justification that there was

17  an error well understood and comprehended in existing law beyond any possibility for fairminded

18  disagreement." Harrington,131 S. Ct. at 786-87.

19        The court looks to the last reasoned state court decision as the basis for the state

20  court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

21  2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

22  from a previous state court decision, this court may consider both decisions to ascertain the

23  /////

24

25        [2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
   overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
26  presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
   384 F.3d 628, 638 (9th Cir. 2004)).

1    reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

2    banc).

3            "When a federal claim has been presented to a state court and the state court has

4    denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

5    absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S.

6    Ct. at 784-85.  "When a state court rejects a federal claim without expressly addressing that

7    claim, a federal habeas court presumes that the federal claim was adjudicated on the merits – but

8    that presumption can in some limited circumstances be rebutted." Johnson v. Williams, ___ U.S.

9    ___, ___, 133 S. Ct. 1088, 1096 (2013).  "When the evidence leads very clearly to the conclusion

10   that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner

11   to" de novo review of the claim. Id. at 1097; Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

12   F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

13           Where the state court reaches a decision on the merits but provides no reasoning

14   to support its conclusion, a federal habeas court independently reviews the record to determine

15   whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.

16   Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

17   review of the constitutional issue, but rather, the only method by which we can determine

18   whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.

19   Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

20   there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.

21           In addition, when a state court's decision on the merits does not satisfy the criteria

22   set forth in § 2254(d), a federal habeas court conducts a de novo review of a habeas petitioner's

23   claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey,

24   533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas

25   relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the

26   habeas petition by considering de novo the constitutional issues raised.").

1    II.  Analysis of Petitioner's Claims

2         A.        Ground One:  Police Investigation

3              Petitioner claims that the Stockton Police Department inadequately investigated

4    the crimes of which he was accused and convicted in violation of his rights to equal protection

5    and due process of law under the Fourteenth Amendment.[3]  (ECF No. 39 at 7-8, 13, 40-43, 59-

6    60.[4])  Petitioner asserts that inconsistencies in the victims' statements were inadequately

7    investigated by police prior to issuance of the search warrant which yielded evidence later

8    admitted at petitioner's trial.  (Id.)

9              Petitioner presented this claim in state habeas petitions filed with the San Joaquin

10   County Superior Court, the California Court of Appeal for the Third Appellate District and the

11   California Supreme Court.  (LD 7, 17, 21.)  Each of those petitions was denied by the respective

12   state court without reasons given for the rejection of this particular claim advanced by petitioner.

13   (LD 8, 18, 22.)  Nonetheless, it is presumed that each state court rejected the claim on its merits.

14   See Richter, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and

15   the state court has denied relief, it may be presumed that the state court adjudicated the claim on

16   the merits in the absence of any indication or state-law procedural principles to the contrary.")

17   Based on this presumption and an independent review of the record before the state courts (see

18   Doe v. Woodford, 508 F.3d 563, 567 (9th Cir. 2007); Reynoso, 462 F.3d at 1109), the

19   undersigned concludes that the rejection of this claim by the state courts is consistent with clearly

20

21              [3] Within ground one, petitioner also contends that trial counsel failed to adequately
22   investigate defenses, failed to challenge the veracity of the affidavit in support of the arrest
     warrant, and failed to file a motion to suppress evidence.  These allegations will be addressed in
23   the discussion of petitioner's ground two which asserts that trial counsel rendered ineffective
     assistance.  (ECF No. 39 at 7-8.)

24              [4] The third amended petition consists of seventy non-sequentially numbered pages plus
25   voluminous exhibits. Various "attachment sheets" are interspersed with the model federal habeas
     corpus form, rendering the pagination therein quite confusing.  Citations to the third amended
26   petition are to the chronological order of the pages filed with the court and not necessarily to the
     page numbers designated by petitioner.

1  established federal law and was based on a reasonable determination of facts in light of the

2  evidence presented.

3            In this regard, the United States Supreme Court has not held that a criminal

4  defendant has an equal protection or due process right to an adequate police investigation, nor

5  does such a rule flow from clearly established Supreme Court precedent.  This lack of applicable

6  precedent is alone fatal to petitioner's claim based upon the alleged violation of his Fourteenth

7  Amendment rights.  See 28 U.S.C. § 2254(d); Richter, 131 S. Ct. at 786 ("It is not an

8  unreasonable application of clearly established Federal law for a state court to decline to apply a

9  specific legal rule that has not been squarely established by this Court.") (citing Knowles v.

10  Mirzayance, 556 U.S. 111, 112 (2009)); Ocampo v. Vail, 649 F.3d 1098, 1106 (9th Cir. 2011).

11            Furthermore, it is clear that the allegations in the third amended petition fail to

12  suggest that petitioner suffered a violation of his rights to equal protection or due process.  The

13  Equal Protection Clause "is essentially a direction that all persons similarly situated should be

14  treated alike."  City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  To

15  state a cognizable claim under the Equal Protection Clause, a plaintiff "must plead intentional

16  unlawful discrimination or allege facts that are at least susceptible of an inference of

17  discriminatory intent."  Byrd v. Maricopa County Sheriff's Dep't., 565 F.3d 1205, 1212 (9th Cir.

18  2009) (quoting Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir.

19  1998)).  Petitioner's allegations that the victims' statements were inconsistent and that the

20  police's investigation was inadequate do not reflect intentional discrimination on the part of

21  police not do they allow for a reasonable inference of discriminatory intent on the part of police.

22            "The Fourteenth Amendment prohibits the deprivation of liberty "without due

23  process of law"; that guarantee is the source of the federal right to challenge state criminal

24  convictions that result from fundamentally unfair trial proceedings."  Brecht v. Abrahamson, 507

25  U.S. 619, 639 (1993).  In support of his habeas claim based upon an alleged due process

26  violation, petitioner cites a single Supreme Court decision case - Spinelli v. United States, 393

9

1   U.S. 410 (1969), abrogated by Illinois v. Gates, 462 U.S. 213 (1983).  Prior to its abrogation by

2   Gates, Spinelli (and its predecessor Aguilar v. Texas, 378 U.S. 108 (1964)) required application

3   of a two-prong test to determine whether a finding of probable cause in support of the issuance of

4   a search warrant could be based on hearsay.  Spinelli, 393 U.S. at 412-13.  The holding in

5   Spinelli is, however, no longer the law and does not support petitioner's habeas claim based on

6   an alleged due process violation.  Petitioner received all the process that he was due.  He was

7   afforded a jury trial at which the complaining witnesses testified and were subject to cross-

8   examination and impeachment by defense counsel.  (LD 3 at 2.)  Defense counsel argued to the

9   jury the defense theory of the case that the victims were lying to cover up their own unlawful

10  drug distribution operation.  (Id. at 3.)  The jury nonetheless found petitioner guilty on all counts

11  despite any inconsistencies in the victims' statements and despite allegations that they were

12  involved in drug sales.  On this record, petitioner has failed to state a cognizable claim for habeas

13  relief based upon an alleged violation of due process.

14          For all these reasons, petitioner is not entitled to federal habeas relief with respect

15  to his first claim.

16          B.      Ground Two:  Ineffective Assistance - Trial Counsel

17          Petitioner claims that his trial counsel made several errors which deprived

18  petitioner of the effective assistance of counsel.  In particular, petitioner alleges that his trial

19  counsel failed to:  (1) challenge the veracity of the search warrant affidavit and to obtain

20  suppression of the items illegally seized pursuant to that warrant; (2) interview potential defense

21  witnesses Christina Nunez and John Keovongxay; (3) inform the trial court that petitioner wished

22  to accept the prosecution's plea offer of nine years in state prison; (4) to file a motion pursuant to

23  California Penal Code § 1368 seeking a hearing to determine petitioner's competency to stand

24  trial; (5) object to the prosecutor's questioning of witnesses at trial; and (6) adequately advise

25  petitioner in recommending that he not testify in his own defense.  (ECF No. 39 at 7-8, 34.)

26  /////

1    The Sixth Amendment guarantees the effective assistance of counsel.  In

2  Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated the test for

3  demonstrating ineffective assistance of counsel.  First, a petitioner must show that considering all

4  the circumstances, counsel's performance fell below an objective standard of reasonableness.

5  Strickland, 466 U.S. at 688.  Petitioner must identify the acts or omissions that are alleged not to

6  have been the result of reasonable professional judgment.  Id. at 690.  A reviewing court must

7  then determine whether in light of all the circumstances, the identified acts or omissions were

8  outside the range of professional competent assistance.  See Id.; Wiggins v. Smith, 539 U.S. 510,

9  521 (2003).  "There is a strong presumption that counsel's performance falls within the 'wide

10  range of professional assistance.'"  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting

11  Strickland, 466 U.S. at 689).  There is also a strong presumption that counsel "exercised

12  acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d

13  695, 702 (9th Cir.1990) (citing Strickland, 466 U.S. at 689).  On habeas corpus review under the

14  AEDPA, the Strickland standard is doubly deferential:  "[T]he question is not whether counsel's

15  actions were reasonable.  The question is whether there is any reasonable argument that counsel

16  satisfied Strickland's deferential standard."  Harrington, 131 S. Ct. at 787–88.

17    A habeas petitioner claiming ineffective assistance of counsel must also

18  affirmatively prove prejudice.  See Strickland, 466 U.S. at 693.  Prejudice is found where "there

19  is a reasonable probability that, but for counsel's unprofessional errors, the result of the

20  proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability

21  sufficient to undermine the confidence in the outcome."  Id.  See also Williams, 529 U.S. at

22  391–92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  "The likelihood of a different

23  result must be substantial, not just conceivable."  Harrington, 131 S. Ct. at 792.  A reviewing

24  court "need not determine whether counsel's performance was deficient before examining the

25  prejudice suffered by defendant as a result of the alleged deficiencies . . . [i]f it is easier to

26  dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course

1    should be followed." <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955 (9th Cir. 2002) (citing <u>Strickland</u>, 466

2    U.S. at 697).

3            Petitioner raised counsel's alleged omissions designated as (1)-(3) above on direct

4    appeal.  The California Court of Appeal rejected petitioner's ineffective assistance of counsel

5    arguments, stating:

6            [T]he record on appeal does not support any of these contentions of
             incompetence, therefore defendant must pursue these claims via
7            habeas corpus, where the relevant facts can be determined.  (<u>See</u>
             <u>People v. Mendoza Tello</u> (1997) 15 Cal. 4th 264, 266-68.)
8

9    (LD 3 at 5.)  Of the alleged errors of his trial counsel now cited by petitioner, he presented only

10   the error designated as (3) above, regarding trial counsel's failure to apprise the court that

11   petitioner was willing to accept a plea offer, to the California Supreme Court on habeas corpus.

12   As noted above, that state habeas petition was summarily denied.  (LD 21, 22.)

13           1.    <u>Motion to Suppress</u>

14           Petitioner alleges that his trial counsel provided ineffective assistance when he

15   failed to move to suppress the laptop, "which was the only physical evidence used" against

16   petitioner.  (ECF No. 39 at 41, 45-46, 61-62.)  Petitioner now contend that the laptop was

17   illegally seized, because the searching officers moved it in order to turn it on and inspected its

18   contents all without probable cause to do so.  (<u>Id.</u> at 45.)  Petitioner further alleges that his trial

19   counsel erroneously informed him there were no viable grounds upon which to make a

20   suppression motion.  (<u>Id.</u>)  Finally, petitioner alleges that his trial counsel "lied to the petitioner

21   by telling him that the police had a search warrant" and "lied [to] the judge on that concern at a

22   <u>Marsden</u> hearing."  (<u>Id.</u> at 46.)

23   /////

24   /////

25   /////

26   /////

1    According to the transcripts of petitioner's three Marsden[5] hearings, his trial

2  counsel believed that any motion to suppress evidence on petitioner's behalf would have been

3  without merit.[6]  As defense counsel first explained on March 26, 2009, after reviewing the entire

4  case file, he determined that the filing of any pretrial motions would be "specious."  (Sealed

5  Reporter's Transcript ("SRT") at 3.)  In defense counsel's opinion, there were "no legally

6  colorable motions" to be made in petitioner's case.  (Id.)  Moreover, in counsel's estimation, the

7  search warrant in question was "perfectly legal."  (Id. at 6.)  At a second Marsden hearing on

8  June 11, 2009, defense counsel stated that motions that petitioner was urging he file would have

9  "no legal merit whatsoever."  (Id. at 17.)  Finally, defense counsel addressed the issue of whether

10  a motion to suppress evidence should be filed yet a third time during the Marsden hearing held

11  on August 19, 2009, stating:

12          [H]e's right, I didn't file [a suppression motion].  He's also right
           because I told him there is no motion here.
13
           I told him on the record, in a previous Marsden, that I do not make
14          it a habit of filing specious motions and I'm not going to file one in
           the case.
15
           I discussed with him specifically the computer issue.  That while
16          the warrant may not have specified the make, model, color, screen
           size, serial numbers, et cetera, that one would like to find on, say, a
17          purchase receipt, I also explained to him that the warrant doesn't
           have to be so specific.  It's specific enough.  And when they were
18          looking for a laptop and saw – they found a laptop, that's enough
           for the purposes of the warrant.
19

20  ──────────────────

21      [5]  Pursuant to People v. Marsden, 2 Cal. 3rd 118 (1970), when a criminal defendant in
    California asserting inadequate representation seeks to discharge appointed counsel and
22  substitute another attorney, the trial court must permit him to explain the basis of his contention
    and to relate specific instances of the attorney's inadequate performance.  People v. Memro, 11
23  Cal.4th 786, 857 (1995) (quoting People v. Fierro, 1 Cal.4th 173, 204 (1991)).

24      [6]  Having put his counsel's performance at issue by claiming that he received ineffective
    assistance in the state courts at trial and on appeal, petitioner has waived his attorney-client
25  privilege.  See Bittaker v. Woodford, 331 F.3d 715, 716 (9th Cir. 2003) (en banc) ("It has long
    been the rule in federal courts that, where a habeas petitioner raises a claim of ineffective
26  assistance of counsel, he waives the attorney-client privilege as to all communications with his
    allegedly ineffective lawyer.")

13

(Id. at 53-54.)  The state trial court judge presiding at this latter Marsden hearing stated to petitioner, "as your attorney has just said, the warrant doesn't have to give a serial number and a brand and a size and color of a laptop computer.  It's only necessary for a warrant to say they are looking for a laptop computer.  That's sufficient."  (Id. at 56.)

Nothing in the record supports petitioner's current allegations that there was in fact no search warrant or that counsel "lied" to the trial court about the existence of a warrant.  Petitioner's attempt to explain that the laptop was illegally seized because it was "moved" does not come close to demonstrating a colorable basis upon which trial counsel should have based a motion to suppress evidence.  Of course, counsel's failure to raise a meritless argument does not constitute ineffective assistance.  See Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000); Ceja v. Stewart, 97 F.3d 1246, 1253 (9th Cir. 1996) (trial counsel is not ineffective for failing to file a suppression motion "which would have been 'meritless on the facts and the law'"); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994) (failure to file suppression motion is not ineffective assistance where counsel investigated filing the motion and there was no reasonable possibility that the evidence would have been suppressed).

Accordingly, this basis for petitioner's ineffective assistance of trial counsel claim lacks merit.

### 2.    Potential Defense Witnesses

Petitioner also claims that his trial counsel provided ineffective assistance by refusing to interview and call as defense witnesses at trial, Christina Nunez and John Keovongxay.  (Pet. at 7, 46-48, 61-62.)  Petitioner alleges that Nunez could have testified as to "the reasons for the laptop being at the [residence in which] it was found."  (Id. at 47.)  According to petitioner John Keovongxay, the brother of the female victim, could have testified "that his sister and her boyfriend Mason was lying and trying to get the laptop back that Mason lost in a dice game [sic]."  (Id.)

/////

14

1    Defense counsel has a "duty to make reasonable investigations or to make a

2    reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at

3    691. "Yet, the duty to investigate and prepare a defense is not limitless:  it does not necessarily

4    require that every conceivable witness be interviewed." Hendricks v. Calderon, 70 F.3d 1032,

5    1040 (9th Cir. 1995) (internal quotation marks omitted).  "When the record clearly shows that the

6    lawyer was well-informed, and the defendant fails to state what additional information would be

7    gained by the discovery he or she now claims was necessary, an ineffective assistance claim

8    fails." Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001).  "Furthermore, ineffective

9    assistance claims based on a duty to investigate must be considered in light of the strength of the

10   government's case." Id. (internal quotation marks omitted).

11   Defense counsel also addressed petitioner's allegations regarding potential trial

12   witnesses Nunez and Keovongxay during the Marsden hearings.  Defense counsel indicated at

13   each of the three Marsden hearings that he had spoken with prospective witness Nunez and found

14   her statement to be unhelpful to the defense.  (SRT at 10, 19-21, 53-55.)  At the second Marsden

15   hearing counsel explained:

16            I didn't interview her because I've already talked to her and, well,
              her story in my opinion is not going to help the defense in any way,
17            shape or form.  Her story sounds utterly uncredible, incredible, and
              as a defense counsel, I am not going to call witnesses just because
18            my client wants me to.  I'm going to call witnesses that help my
              client's defense.  She is one that will definitely not help my client's
19            defense.

20   (Id. at 20-21.)  When petitioner interjected at the Marsden hearing that Nunez would testify that

21   the laptop was hers and that she bought it, defense counsel responded:

22            The problem is that's not all the story.  First I'm told she bought it,
              then I'm told it was owed to her, then I'm told it was stolen, then
23            I'm told it's actually a debt being paid for selling faulty narcotics.
              It cannot be all those things at the same time.  If it is, the jury is
24            going to laugh at us.

25   (Id. at 21.)

26   /////

15

1    Defense counsel also indicated at the hearing that he had attempted unsuccessfully

2    to locate potential witness John Keovongxay, the victim's brother, but did not have sufficient

3    contact information.  (Id. at 21-22.)  In any event, counsel stated that he did not expect that

4    Keovongxay could provide any information that would be useful to the defense.  Defense counsel

5    represented that he would continue to attempt to interview this potential witness and would call

6    him to testify at trial if he provided information favorable to the defense case, but would not seek

7    to delay of the trial for this purpose in light of his expectations.  (Id.)

8    At petitioner's third Marsden hearing, defense counsel represented to the state

9    trial court that his decision not to call these two witnesses to testify at petitioner's trial was a

10   tactical one:

11   I feel that [Nunez's] credibility, number one, would be at issue. [¶]
     Number two, while there is a potential for – as Mr. Morris said,
12   there's a potential for Miss Nunez to explain how the computer got
     to his room, in the house that he was staying in, specifically, the
13   room that he was in when they found the computer, when
     juxtaposed to the other information that I am privy to in the case,
14   necessary for the defense, it seems that we are, for lack of a better
     word, arguing out of both sides of our mouth at the same time.

15   And for the purposes of a defense that, in my estimation, is not
16   going to get us anywhere near a . . . not guilty verdict.

17   I think that he stands a much better chance going with the – well,
     the tactic that we have delineated – that I've delineated to him over
18   and over again.

19   There was another witness as well that he wanted me to interview,
     [the victim's] brother.  His brother provided conflicting stories.  He
20   provided conflicting stories about the brother.  What this boils
     down to is a grasp for last straws.  The only problem is, grasping
21   for last straws is not exactly the most convincing way of appealing
     to a jury.

22
     So, being in charge of this trial insofar as the defense is concerned,
23   I'm exercising my discretion as defense counsel and not calling
     witnesses that I feel will only damage my client's case.

24

25   (RT at 54-55.)

26   /////

16

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less then complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690. See also Mancuso v. Olivarez, 292 F.3d 939, 954 (9th Cir. 2002) ("We will not second-guess such decisions or use hindsight to reconstruct the circumstances of counsel's challenged conduct."). This court applies "a heavy measure of deference to counsel's judgments" about the need for further investigation and interview of witnesses. Strickland, 466 U.S. at 690.

Here, petitioner's allegations about potential trial witnesses Nunez and Keovongxay are unsupported by a declaration from either potential witness. Moreover, the record reflects that counsel was well-informed about the potential testimony that could be offered by Nunez and made a reasonable decision that her testimony at trial would be unhelpful to the defense, making further investigation unnecessary. Petitioner's disagreement with his counsel's decision in this regard does not state a cognizable Sixth Amendment claim. See Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir. 1983) ("A tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel.").

As to potential witness John Keovongxay, petitioner's failure to demonstrate that this witness had information helpful to the defense is fatal to his ineffective assistance claim. Petitioner offers mere speculation, unsupported by any evidence, that this witness might have testified that the victims, one of whom was his sister, lied about the robbery and that the laptop had actually been lost in a dice game. Such pure speculation is insufficient to warrant federal habeas corpus relief. See Bragg, 242 F.3d at 1088 (prejudice not established where petitioner did "nothing more than speculate that, if interviewed," the witness would have given helpful information); Dows v. Wood, 211 F.3d 480, 486-87 (2000) (no ineffective assistance of counsel for failure to call witnesses where petitioner did not identify the witness, provide evidence that the witness would testify, or present an affidavit from the alleged witness); Grisby v. Blodgett,

1   130 F.3d 365, 373 (9th Cir. 1997) (self-serving affidavit not sufficient to demonstrate ineffective

2   assistance where there is no affidavit presented from the alleged witness); United States v.

3   Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's

4   failure to call a witness where, among other things, there was no evidence in the record that the

5   witness would actually testify at trial).  Without any evidence before this court that John

6   Keovongxay would have testified in a manner that might have led to a different result at trial,

7   petitioner's bare allegations cannot support a finding of ineffective assistance.

8           In sum, petitioner has not demonstrated that either potential witness he now

9   identifies could have offered testimony helpful to the defense, let alone that had defense counsel

10  called them to testify that there is a reasonable probability that the result of his trial would have

11  been different.  Accordingly, petitioner is not entitled to federal habeas relief with respect to this

12  aspect of his ineffective assistance claim.

13          3.    Plea Offer

14          Petitioner next claims that he informed his trial counsel on June 8, 2009, that he

15  wished to accept the prosecution's plea offer calling for a sentence of nine years in state prison

16  but that trial counsel failed to notify the court or the prosecution of his desire to plead.  (ECF No.

17  39 at 35, 62.)  When, later that day, the prosecutor took all plea offers off the table at the June 8,

18  2009 hearing, petitioner claims that he "spoke up and told the judge that he came there that day

19  to accept the offer."  (Id. at 35.)

20          The record reflects that at a pretrial hearing on June 8, 2009, the prosecutor stated

21  on the record that two plea offers had been made to petitioner, but that he had not availed himself

22  of those offers and that they had been withdrawn.  (Petition, Ex. G, RT of June 8, 2009 hearing at

23  18.)  At no time during that pretrial hearing did petitioner indicate that he had told his attorney

24  that he wanted to accept a plea offer or that his counsel had failed to convey petitioner's

25  acceptance of a prosecution plea offer.  Rather, at the hearing petitioner merely stated:  "I was

26  offered a deal earlier in the proceedings of the court.  Personal matters of my mom's illness and

1  death and other situations in court, I wasn't even ready (sic) able to comprehend what was going

2  on and I would like to resolve the matter if possible." (Id.)  In response, the Deputy District

3  Attorney again stated that petitioner's case had been trailing a long time, that petitioner had

4  declined an earlier prosecution offer to resolve the case, that the prior offer had expired and that

5  the prosecution was now ready to proceed to trial.  (Id.)

6            Thereafter, at petitioner's June 11, 2009 Marsden hearing, his trial counsel stated:

7            I have kept Mr. Morris very well informed regarding his case.  His
             case is a life case.  It came to our office as a two-strike case,
8            however, the district attorney at the time didn't recognize that it
             was a two-strike case.
9
             I'll show the court the note on the public defender action sheet
10           written by the prelim attorney, where the original offer was, in fact,
             four years.  That same offer remained on the table until [petitioner]
11           indicated that he wanted to hire private counsel.  At that point, the
             district attorney withdrew the four-year offer on the record, making
12           it a nine-year offer.  He refused the nine-year offer.  At a later
             hearing, the district attorney withdrew the nine-year offer and then
13           said zero offers.

14           I have maintained my client completely up to date and apprised of
             what the status is regarding his case, what the status is regarding
15           his offers.

16           He approached me earlier this week and specifically informed me
             that he was not thinking properly because at the time that this was
17           going on his mother was ill and his mother was passing away.  I
             informed the court of those issues.  I informed the DA of those
18           issues.  And I informed my client that the court and the district
             attorney, while as sympathetic and empathetic as they can be, are
19           not going to cut him slack because of that unfortunate family issue.

20  (SRT at 16.)  Petitioner did not contradict these statements by his trial counsel to the court.

21  Rather petitioner confirmed that he had "a lot of issues that [he] was focusing on" at the time his

22  attorney conveyed the prosecution's plea offers and that there was "a lot of cloudiness in his

23  thinking." (Id. at 19.)  Despite complaining that he felt his counsel did not adequately explain one

24  of the plea offers to him, petitioner did not purport to have ever told his attorney that he had

25  wanted to accept any of the prosecutor's plea bargain offers.  (Id.)

26  /////

19

1    There is no evidence in this record supporting petitioner's allegations that he

2    manifested assent to a plea offer which his trial counsel then failed to convey to the court or to

3    the prosecution.  To the contrary, petitioner's allegations are squarely contradicted by the state

4    court record, which reflects that he either chose not to accept the plea offers made to him before

5    they expired or neglected to consider those offers prior to their expiration and later experienced

6    regret over having not timely accepted.  For these reasons, the state courts' rejection of this

7    aspect of petitioner's ineffective assistance of counsel claim is not contrary to, or an

8    unreasonable application of clearly established federal law, nor was the state courts' decision

9    reached based on an unreasonable determination of facts in light of the evidence presented.

10           4.    Incompetence

11   Petitioner next claims that his trial counsel should have alerted the court that

12   petitioner was experiencing mental health issues by requesting a competency hearing pursuant to

13   California Penal Code § 1368.  (ECF No. 39 at 8, 49, 54-58.)  In this regard, petitioner states that

14   his trial counsel failed to raise the issue of petitioner's participation in the CDCR Mental Health

15   Delivery System Program and failed to tell the court that petitioner was taking psychotropic

16   medication for depression and was "hearing voices."  (Id. at 49.)  Petitioner argues that he told

17   his trial counsel he did not understand the nature of the court proceedings nor what was being

18   said in court and that he was feeling suicidal.  (Id. at 49, 58.)  Petitioner contends that although

19   he requested him to do so, his counsel did not apprise the court of these circumstances.  (Id.)

20   Petitioner challenged his trial counsel's performance on this basis in his state

21   habeas petitions.  In the last reasoned state court decision addressing this aspect of petitioner's

22   ineffective assistance the claim, the San Joaquin County Superior Court concluded:

23           Petitioner appears to assert that he had a history of mental health
             issues preceding his trial and these were not raised by his court-
24           appointed trial attorney.  In support of this claim, Petitioner has
             submitted his own affidavit and documentation that, in the months
25           preceding trial he was taking the prescription medicine Naproxin,
             an anti-inflammatory drug.  He has included a Suicide Risk
26           Assessment Check, dated 2/13/09, which indicates that he denied

20

1                 any suicidal intentions.  An attached page for interdisciplinary
                Progress notes (CDCR form 7230) prepared by "S. Gibbs"

2                 indicates that Petitioner appeared "stable and future oriented."
                Petitioner has failed to produce any evidence which would

3                 establish that, at the time of trial or during plea negotiations he was
                suffering from mental health issues that would have prejudiced this

4                 case. [¶] Therefore, Petitioner has not stated a claim upon which
                relief can be granted.

5

6 (LD 8.)

7         "Section 1368 requires a competency hearing when the court declares a doubt as

8 to competence."  People v. Garcia, 159 Cal. App.4th 163, 169-70 (2008) (citing Cal. Penal Code

9 § 1368(a)).  However, "[a] declaration of doubt by counsel alone is not sufficient to trigger a

10 statutory right to a competency hearing."  Id.  "[T]o be entitled to a competency hearing, a

11 defendant must exhibit more than a preexisting psychiatric condition that has little bearing on the

12 question whether the defendant can assist his defense counsel."  People v. Rogers, 39 Cal.4th

13 826, 847 (2006) (internal quotation marks and alterations omitted).

14         Here, petitioner's bare allegations that he suffered from mental health issues and

15 an inability to understand the criminal proceedings are unsupported by any evidence in the record

16 aside from his own self-serving statements.  Even if his allegations of hearing voices and having

17 suicidal tendencies were supported by evidence in the record, such would not necessarily

18 constitute substantial evidence that would have supported a finding of incompetence to stand

19 trial.  See Rogers, 39 Cal.4th at 846-51 (suicidal tendencies did not constitute substantial

20 evidence of incompetence where not accompanied by bizarre behavior, the testimony of a mental

21 health professional regarding competence, or any other indications of an inability to understand

22 the proceedings or to assist counsel).

23         Moreover, contrary to petitioner's allegations that he did not understand the

24 criminal proceedings, his conduct during his Marsden hearings and his ability to verbalize his

25 complaints and disagreement with trial counsel's decisions and tactics indicates that he fully

26 understood the proceedings against him.  (SRT at 1-62.)  Under these circumstances, there is no

reasonable probability that a declaration of doubt by his trial counsel as to petitioner's

competency would have prompted the judge to hold a competency hearing, let alone find

petitioner incompetent to stand trial.  The state court's conclusion that there was no evidence that

petitioner suffered from mental health issues prejudicial to his case was a reasonable

determination of the facts.  Finally, the rejection of petitioner's ineffective assistance claim on

this basis is consistent with, and a reasonable application of, the Strickland standard.

> 5.    Objections

Petitioner next claims that his trial counsel erred in failing to raise various

objections at his trial.  Specifically, petitioner asserts that his trial counsel should have objected

to:  the prosecutor's opening statement; to "the questioning of the prosecutor;" to the

prosecution's introduction of a replica firearm as demonstrative evidence;  and to various jury

instructions given by the trial court.   (ECF No. 39 at 35, 46, 48, 49, 50 & 51.)

Respondent counters by arguing that this aspect of petitioner's ineffective

assistance claim remains unexhausted.  Putting aside the exhaustion issue, however, this aspect

of petitioner's ineffective assistance claim clearly lacks merit.  See 28 U.S.C. § 2254(b)(2).  Of

course, a district court may deny an unexhausted claim on the merits notwithstanding a

petitioner's failure to exhaust available state court remedies when it is perfectly clear that the

claim is not "colorable."  Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

First, as to his trial counsel's alleged failure to object to jury instructions,

petitioner claims that his counsel should have objected to the following:  CALCRIM 400, 401,

1603, and 1702, and "the Accomplice Testimony jury instruction base[d] on it was misleading

and prejudice to the defendant [sic]."  (ECF No. 39 at 50.)  Petitioner does not elaborate further

with respect to this argument and cites a single California court decision in support of it, People

v. Samaniego, 172 Cal. App.4th 1148 (2009).  In Samaniego, the California Court of Appeal held

that the version of CALCRIM 400 given in that case was misleading, but denied habeas relief

based on the finding that the error was harmless.  Id. at 1164-67.  Here, petitioner offers only

1  conclusory allegations that his counsel should have objected to the giving of CALCRIM 400.  He

2  has not shown that his counsel performed deficiently in failing to object to the instruction in his

3  case, nor has he attempted to establish that any prejudice resulted.  Accordingly, petitioner's

4  conclusory allegations in this regard are insufficient to warrant federal habeas relief.  James, 24

5  F.3d at 26; Jones, 66 F.3d at 205.

6          Petitioner has also failed to allege sufficient facts with respect to the remaining

7  objections he claims his trial counsel should have raised but did not.  As to the prosecution's

8  opening statement, petitioner alleges that his defense counsel should have objected when the

9  prosecutor told the jury that "petitioner was found sleeping in the room where the laptop was

10 found[.]"  (ECF No. 39 at 50.)  Petitioner does not provide any further explanation of this

11 allegation of ineffective assistance.  Rather, he merely cites to an affidavit in which he stated that

12 his girlfriend, Christina Nunez, slept in the room that the laptop was found in at his mother's

13 house and that he slept in the living room.  (Id. at 44.)  However, the evidence admitted at

14 petitioner's trial indicated that the laptop was recovered from petitioner's room at his mother's

15 house and, moreover, that it was petitioner's mother who identified the room where the laptop

16 was found as being his.  (1 RT at 199-203.)  In short, petitioner has failed to state any valid basis

17 upon which his counsel should have posed an objection.

18          As to the prosecutor's questioning of witnesses at trial, petitioner summarily cites

19 to pages of the reporter's transcript of the trial, but does not clearly state any basis on which his

20 trial counsel should have objected to any particular line of questioning.  (ECF No. 39 at 51.)

21          Finally, as to the demonstrative evidence, petitioner states repeatedly that the

22 replica firearm had nothing to do with the case being tried and that his defense counsel should

23 have objected to its use.  However, once again, petitioner does not explain the basis for this claim

24 of ineffective assistance in sufficient detail or with any substantive explanation.  (Pet. at 35, 48,

25 49, 50.)

26 /////

1        In summary, petitioner's conclusory allegations that his trial counsel should have

2    objected to the prosecutor's opening statement, questioning of witnesses, and use of

3    demonstrative evidence at his trial fail to establish that defense counsel's performance fell below

4    an objective standard of reasonableness. James, 24 F.3d at 26; Jones, 66 F.3d at 205.[7]

5        Even assuming that any or all of petitioner's conclusory contentions were

6    sufficient to establish that his trial counsel performed in a manner below an objective standard of

7    reasonableness in failing to raise these various objections, petitioner is not entitled to relief

8    because he has not, and cannot, demonstrate prejudice under Strickland.  In this regard, the

9    evidence of petitioner's guilt introduced at his trial was strong.  Both victims, Mason and

10   Keovongxay, knew or were familiar with petitioner prior to the robbery and positively identified

11   him as one of the men who robbed them on August 31, 2008.  (1 RT at 83-84, 135, 190-93.)

12   Petitioner was not wearing a mask and did not have his face covered during the robbery.  (Id. at

13   84.)  According to the trial testimony, on the night of the robbery Mason opened the front door

14   for petitioner who then forced his way into the apartment along with the other robber,

15   Christopher Dixon.  (Id. at 67-68, 135-36, 144-45.)  As Mason wrestled for control of Dixon's

16   gun, petitioner punched Mason on the right side of his face and knocked him to the ground.  (Id.

17   at 85-86, 136-37, 145.)  As Dixon demanded money from Mason and Keovongxay, petitioner

18   stood over Mason to make sure that he did not move.  (Id. at 86-87, 138.)  Dixon and petitioner

19   took Keovongxay's purse, money, laptop, two cell phones, and a handheld video game.  (Id. at

20   88, 137-39.)  Law enforcement recovered Keovongxay's laptop computer from petitioner's

21   bedroom at his mother's house.  (Id. at 199-203.)

22

23        [7]  Any or all of these alleged omissions on the part of defense counsel may have been
24   valid strategic decisions.  See Claybourne v. Lewis, 64 F.3d 1373, 1383 (9th Cir. 1995)
     ("[R]easonably competent counsel might have had many valid reasons for failing to object to the
25   form of opposing counsel's questions or interrupt opposing counsel during opening and closing
     statements.").  The record before the state courts as well that before this court does not contain an
26   affidavit from trial counsel explaining his decisions not to pose the objections, which petitioner
     now claims should have been made, in relation to his trial strategy.

1      On this record, petitioner's ineffective assistance claim based upon his trial

2  counsel's failure to make various objections, is not colorable.

3          6.      Decision not to Testify

4      Finally, petitioner alleges that he "wanted to testify on why he was there and what

5  really happened but his counsel advise[d] him not to.  This was ineffective assistance of

6  counsel."  (ECF No. 39 at 52.)[8]  It appears that this vague and conclusory allegation of ineffective

7  assistance may be unexhausted but, in any event, should also be rejected on the merits.  See

8  Cassett, 406 F.3d at 624.

9      The decision of whether to testify is personal; it can be relinquished only by the

10  defendant.  See United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993); Secrease v. Walker,

11  No. 2:09-cv-299 JAM TJB, 2011 WL 2790155, at *37 (E.D. Cal. July 13, 2011).  If petitioner

12  wanted to testify at trial, as he now alleges, he could have rejected his attorney's tactical decision

13  by insisting on testifying.  Id.  Notably, petitioner does not allege that his trial counsel failed to

14  inform him of his right to testify, but only that his lawyer's advice was that he not testify in his

15  own defense at trial.  Moreover, petitioner has failed to state the substance of the testimony he

16  would have given at trial had he been called to the stand and to explain how that testimony

17  would have benefitted his defense.  Here too, petitioner's conclusory allegation that trial counsel

18  gave him deficient advice not to testify does not show deficient performance or that prejudice

19  resulted therefrom.  James, 24 F.3d at 26; Jones, 66 F.3d at 205.

20      C.      Ground Three:  Search and Seizure

21      In his pending application for federal habeas relief petitioner claims that evidence

22  admitted at his trial was obtained in violation of the Fourth Amendment to the United States

23  Constitution.  (ECF No. 39 at 9, 44-45, 60-61.)  Such a claim is not cognizable in this federal

24  habeas corpus proceeding.  See Stone v. Powell, 428 U.S. 465, 494 (1976).

25

26      [8]  In the answer filed with this court respondent failed to address this aspect of petitioner's
   claim that his counsel provided ineffective assistance.

1    In <u>Stone</u>, the Supreme Court held:

2        "[W]here the state has provided an opportunity for full and fair
         litigation of a Fourth Amendment claim, the Constitution does not
3        require that a state prisoner be granted federal habeas corpus relief
         on the ground that evidence obtained in an unconstitutional search
4        or seizure was introduced at his trial."

5    <u>Id.</u> at 482.  <u>See also</u> <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 899 (9th Cir. 1996) ("A Fourth

6    Amendment claim is not cognizable in federal habeas corpus proceedings if a petitioner has had a

7    full and fair opportunity to litigate the claim in state court.").  "The relevant inquiry is whether

8    petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even

9    whether the claim was correctly decided."  <u>Ortiz-Sandoval</u>, 81 F.3d at 899.  As the Ninth Circuit

10   has explained:

11       Whether or not [the petitioner] did in fact litigate this fourth
         amendment claim in state court, he did have the opportunity to do
12       so.  Under California law, a defendant can move to suppress
         evidence on the basis that it was obtained in violation of the fourth
13       amendment.  <u>See</u> Cal. Penal Code § 1538.5 (West 1982 & Supp.
         1989).  Given that [the petitioner] had an opportunity in state court
14       for "full and fair litigation of his fourth amendment claim, the
         Constitution does not require that [the petitioner] be granted habeas
15       corpus relief on the ground that evidence obtained in an
         unconstitutional search or seizure was introduced at his trial.

16

17   <u>Gordon v. Duran</u>, 895 F.2d 610, 613 (9th Cir. 1990).  <u>See also</u> <u>Locks v. Sumner</u>, 703 F.2d 403,

18   408 (9th Cir. 1983).

19       Here, petitioner had a full and fair opportunity to litigate any Fourth Amendment

20   claim in the trial court.  As discussed above in connection with his ineffective assistance of

21   counsel claim, petitioner's trial counsel determined that the warrant obtained as part of the

22   investigation in question was valid and accordingly, that a  motion to suppress evidence would

23   have been entirely without merit.  Under these circumstances, petitioner's Fourth Amendment

24   /////

25   /////

26   /////

1    claim is barred in this federal habeas proceeding even though it was not actually litigated in state

2    court.  See Ortiz-Sandoval, 81 F.3d at 899.[9]

3           D.       Ground Four:  Ineffective Assistance of Appellate Counsel

4                  On appeal, petitioner's appointed appellate counsel filed a so-called "Wende

5    brief," indicating that he found no arguable grounds for appeal within the appellate record.  See

6    People v. Wende, 25 Cal. 3d 436 (1979); see also Smith v. Robbins, 528 U.S. 259, 265-66

7    (2000) (summarizing the procedure under People v. Wende).  In his ground four for federal

8    habeas relief, petitioner claims that his appellate counsel rendered ineffective assistance by

9    failing to argue on appeal that petitioner's trial counsel rendered ineffective assistance.  (ECF No.

10   39 at 9, 25, 36, 39.)

11                 To prevail on a claim of ineffective assistance of appellate counsel, petitioner

12   must show that counsel's performance fell below an objective standard of reasonableness and

13   that there was a reasonable probability of a more favorable result had appellate counsel not

14   performed deficiently.  Robbins, 528 U.S. at 285-86 ("[T]he proper standard for evaluating

15   Robbins' claim that appellate counsel was ineffective in neglecting to file a merits brief is that

16   enunciated in Strickland v. Washington, 466 U.S. 668[.]").

17                 First, petitioner alleges that his appellate counsel's failure to order a complete

18   record from the trial court "caused him to be ineffective."  (ECF No. 39 at 24-25, 54.)  Under the

19   California Rules of Court, the record on appeal normally excludes a Reporter's Transcript of

20   opening statements.  (Cal. Rules of Court, Rule 8.320(c)(3).)  Either party may request a

21   transcript of the opening statements provided that the party indicates how such a transcript will

22   be useful to the appeal.  (Cal. Rules of Court, Rule 8.324(b)(2)(B).)  Petitioner alleges that if his

23   appellate counsel had obtained a transcript of the opening statements he would have

24

25           [9]  Petitioner's claim that his trial counsel provided ineffective assistance by deciding not
     to file a motion to suppress, is distinct from petitioner's substantive Fourth Amendment claim
26   which is barred in these proceedings by the holding in Stone.  The former claim has already been
     addressed and rejected in the analysis of petitioner's ground two for relief above.

                                                       27

1   "discover[ed] the prejudicial misconduct of the prosecutor." (ECF No. 39 at 25.)

2           However, as discussed above in addressing his ground two for habeas relief,

3   petitioner has failed to show any basis for objection to the prosecutor's opening statement.

4   Accordingly, his allegation that his appellate counsel proceeded with an incomplete record which

5   caused him to provide ineffective assistance is unsubstantiated and without merit.  Moreover,

6   petitioner cannot show that prejudice resulted from appellate counsel's alleged failure to

7   challenge the adequacy of trial counsel's performance on appeal.  As discussed, the record simply

8   does not support a claim that petitioner's trial counsel rendered a deficient performance or that

9   prejudice resulted stemming from any of deficiencies about which petitioner now complains.

10          Finally, the issues that petitioner claims should have been raised on appeal were

11  raised, albeit by petitioner himself and not by counsel.  In this regard, subsequent to appellate

12  counsel's filing of a Wende brief, petitioner filed his own supplemental brief on appeal raising

13  various issues including his trial counsel's alleged ineffectiveness.  (LD 2.)  The state appellate

14  court explicitly addressed and rejected each of the contentions raised in petitioner's pro se

15  supplemental brief, including his allegations that his trial counsel rendered ineffective

16  assistance.  (LD 3 at 4-9.)[10]   Under these circumstances, petitioner cannot show that any

17  prejudice resulted from his appellate counsel's alleged failure to argue on appeal that petitioner's

18  trial counsel rendered ineffective assistance.

19          E.      Ground Five:  Ineffective Assistance of Appellate Counsel

20          In his ground five for federal habeas relief, petitioner claims that his appellate

21  counsel rendered ineffective assistance by failing to raise a challenge to the sentence imposed by

22  the state trial court as "illegal." (Id. at 10, 24, 36, 39, 54, 63-67.)  As noted at the outset,

23  petitioner was sentenced to an aggregate term of eighteen years and four months in state prison as

24

25          [10]  The state appellate court also noted that claims of ineffective assistance of trial counsel
26  are better raised on habeas corpus, rather than direct appeal, so that relevant facts outside the
    record can be determined.  (LD 3 at 5.)

28

1   follows:  on count one, eight years (double the middle term) plus a five-year firearm

2   enhancement (the middle term); on count two, two years eight months (one-third of double the

3   middle term) plus an eight-month firearm enhancement (one-third the middle term); plus a five-

4   year prior serious felony enhancement.  (1 Clerk's Transcript ("CT") at 284.)

5            Petitioner now alleges that the imposition of consecutive sentences rather than

6   concurrent sentences was a sentencing choice which the trial court failed support with valid

7   reasons.  (Id. at 63-64.)  In the last reasoned state court decision addressing this argument, the

8   San Joaquin County Superior Court denied habeas relief, explaining that because petitioner's

9   appellate counsel filed a Wende brief, which "triggers an independent review of the entire record

10  by the reviewing court," and "[b]ecause petitioner's sentencing is part of the record, his claims

11  have been reviewed and rejected in the direct appeal which affirmed his conviction and

12  sentence."  (LD 6.)

13           Pursuant to California Penal Code § 669:

14           When a person is convicted of two or more crimes, whether in the
             same proceeding or court or in different proceedings or courts, and
15           whether by judgment rendered by the same judge or by different
             judges, the second or other subsequent judgment upon which
16           sentence is ordered to be executed shall direct whether the terms of
             imprisonment or any of them to which he or she is sentenced shall
17           run concurrently or consecutively.

18  Cal. Penal Code § 669.  Contrary to petitioner's assertion, under state law the naming of separate

19  victims in separate counts is a permissible reason for which a trial court may impose consecutive

20  sentences.  People v. Caesar, 167 Cal. App.4th 1050, 1061 (2008) ("Based on our Supreme

21  Court's analysis in Calhoun, we conclude that the naming of separate victims in separate counts

22  is a circumstance on which a trial court may properly rely to impose consecutive sentence."),

23  overruled on other grounds by People v. Superior Court, 48 Cal.4th 1 (2010).  Here, the

24  Information charging petitioner named Ralph Mason as a victim with respect to count one and

25  named Lisa Keovongxay as a victim with respect to count two.  (1 CT at 75-76.)  In imposing

26  sentence on petitioner, the trial judge specifically noted that the first degree robbery charged in

29

1    count two involved a separate victim from the victim involved in the first degree robbery alleged

2    in count one.  (RT II at 375.)  Because the trial court stated a valid basis for imposing

3    consecutive sentences, the rejection of this aspect of petitioner's ineffective assistance of

4    appellate counsel claim by the state courts is consistent with, and a reasonable application of the

5    Strickland standard.  See Jones, 231 F.3d at 1239 n.8 (counsel has no duty to raise meritless

6    issue).

7              Petitioner also alleges that his appellate counsel was ineffective in failing to argue

8    on appeal that the sentence imposed upon petitioner in this case violated California Penal Code §

9    654 and its "prohibition of multiple punishments."[11]  (ECF No. 39 at 10, 23-24, 65-66.)  In

10   particular, petitioner contends his sentence on one of the robbery counts should have been stayed,

11   and that multiple gun enhancements were improperly imposed as part of his sentence.  (Id.)

12   These contentions are without merit.

13             California Penal Code § 654 provides, in relevant part:

14             An act or omission that is punishable in different ways by different
             provisions of law shall be punished under the provision that
15           provides for the longest potential term of imprisonment, but in no
             case shall the act or omission be punished under more than one
16           provision.  An acquittal or conviction and sentence under any one
             bars a prosecution for the same act or omission under any other.

17

18   Nevertheless, "[a] defendant may properly be convicted of multiple counts for multiple victims

19   of a single criminal act where the act prohibited by the statute is centrally an act of violence

20   against the person."  People v. McFarland, 47 Cal.3d 798, 803 (1989) (internal quotation marks,

     italics and alterations omitted).  "[W]hen a defendant commits an act of violence with the intent
21
     to harm more than one person or by means likely to harm several persons, his greater culpability
22
     precludes application of section 654."  People v. Centers, 73 Cal. App.4th 84, 99 (1999).  See
23
     also People v. Oates, 32 Cal.4th 1048, 1063 (2004).  Robbery is a crime of violence for purposes
24

25   _____

26        [11]  Again, respondent failed to address this aspect of petitioner's ineffective assistance of
     appellate counsel claim in the answer filed with this court.

of this so-called "multiple victim exception" to § 654.  People v. Deloza, 18 Cal.4th 585, 595 (1998) ("[S]ection 654 does not apply to robbery and attempted robbery convictions involving multiple victims[.]").  Accordingly, petitioner has fails to establish any basis upon which his appellate counsel could have persuasively argued on appeal that the sentence imposed upon petitioner violated California Penal Code § 654 and its prohibition on multiple punishments.

Finally, petitioner also alleges that his appellate counsel should have challenged his sentence on the basis that no gun enhancements should have been imposed, because petitioner was charged and convicted of first degree robbery in which use of a firearm is an element of the crime.[12]  (ECF No. 39 at 67.)  Petitioner's claim in this regard is factually inaccurate, and without merit.  Petitioner was convicted of first degree robbery based on the evidence introduced at trial that he robbed an inhabited dwelling house, not based on his use of a firearm.  See Cal. Penal Code § 212.5 (defining first and second degree robbery).

For all of the reasons set forth above, petitioner has failed to establish that the state courts' rejection of his ineffective assistance of appellate counsel claim was contrary to, or an unreasonable application of the Strickland standard.  Accordingly, he is not entitled to federal habeas relief with respect to that claim.

F.      Ground Six:  Sentence Imposed

Petitioner also contends that imposition of an eighteen year sentence for the crimes of which he was convicted constituted cruel and unusual punishment because the trial court misapplied California Penal Code § 654, thereby causing him to be subject to multiple punishments for the same offense in violation of the Double Jeopardy Clause.  (ECF No. 39 at 36-37, 65-68.)  In particular, petitioner asserts that the trial court should have stayed sentencing on one of the robbery counts pursuant to § 654, and that the court also improperly imposed multiple enhancements under § 654.  (Id.)

---

[12] Respondent also failed to address this allegation by petitioner in the answer filed with this court.

1    To the extent petitioner is alleging that the sentencing court misapplied a state

2 sentencing statute, he has failed to state a cognizable claim on federal habeas corpus.  See Souch

3 v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002) (state law sentencing claims insufficient to merit

4 federal habeas relief); Hendricks v. Zenon, 993 F.2d 664, 674 (9th Cir. 1993) (same); Miller v.

5 Vasquez, 868 F.2d 1116, 118-19 (9th Cir. 1989) (holding that question of whether state erred in

6 application of state sentencing laws does not state a federal constitutional claim).  In any event,

7 as just discussed above in addressing petitioner's ground five for relief based upon ineffective

8 assistance of appellate counsel, these allegations of sentencing error are without merit since the

9 sentence imposed in petitioner's case did not violate California Penal Code § 654.  For this same

10 reason, petitioner was not subjected to multiple punishments for the same offense in violation of

11 the Double Jeopardy Clause.  See Jones v. Thomas, 491 U.S. 376, 381 (1989) ("Our cases

12 establish that in the multiple punishment context, [the interest that the Double Jeopardy Clause

13 seeks to protect] is 'limited to ensuring that the total punishment did not exceed that authorized

14 by the legislature.'").  Here, because under state law the imposition of punishment was

15 authorized with respect to each offense committed by petitioner against each victim, there was no

16 violation of § 654 and Double Jeopardy Clause concerns were not implicated by the sentence

17 imposed in his case.

18    Nor did petitioner's sentence violate the prohibition against cruel and unusual

19 punishment in the Eighth Amendment. "The Eighth Amendment does not require strict

20 proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are

21 'grossly disproportionate' to the crime."  Harmelin v. Michigan, 501 U.S. 957, 1001 (Kennedy,

22 J., concurring) (citing Solem v. Helm, 463 U.S. at 288, 303 (1983)).  See also Lockyer v.

23 Andrade, 538 U.S. 63, 72-73 (2003).  The threshold for an inference of gross disproportionality

24 is high, and successful challenges in federal court to the proportionality of particular sentences

25 are "exceedingly rare."  Solem, 463 U.S. at 289-90 (1983).  See also Ramirez v. Castro, 365 F.3d

26 755, 775 (9th Cir. 2004).

1    In <u>Andrade</u>, the United States Supreme Court held that it was not an unreasonable

2   application of clearly established federal law for the California Court of Appeal to affirm a

3   sentence imposed pursuant to California's Three Strikes law of two consecutive 25 year-to-life

4   imprisonment terms for a petty theft with a prior conviction involving theft of $150.00 worth of

5   videotapes.  <u>Andrade</u>, 538 U.S. at 75.  In <u>Ewing v. California</u>, 538 U.S. 11, 29 (2003), the

6   Supreme Court likewise held that a sentence of 25 years-to-life in prison imposed pursuant to

7   California's Three Strikes law following the defendant's conviction for theft of three golf clubs

8   from a pro shop was not grossly disproportionate and did not violate the Eighth Amendment.  In

9   <u>Ewing</u>, the defendant's crime for which he was sentenced to the challenged term was grand.  <u>Id.</u>

10  at 29; <u>see also</u> <u>Crosby v. Schwartz</u>, 678 F.3d 784, 791–92 (9th Cir. 2012) (finding that the state

11  court's determination that a sentence of 26 years to life in prison under California's Three Strikes

12  law for failure to annually update one's registration as a sex offender and failure to register

13  within five days of a change of address did not constitute cruel and unusual punishment under the

14  Eighth Amendment, was not an unreasonable application of clearly established federal law).

15      In assessing the compliance of a non-capital sentence with the proportionality

16  principle, a reviewing court must consider certain objective factors to the extent possible.  <u>Solem</u>,

17  463 U.S. at 290.  Foremost among these factors are the severity of the penalty imposed and the

18  gravity of the offense.  <u>Id.</u> at 291. "Comparisons among offenses can be made in light of, among

19  other things, the harm caused or threatened to the victim or society, the culpability of the

20  offender, and the absolute magnitude of the crime."  <u>Taylor v. Lewis</u>, 460 F.3d 1093, 1098 (9th

21  Cir. 2006).[13]

22

23          [13]  The United States Supreme Court has also suggested that in assessing such a claim
    reviewing courts compare the sentences imposed upon other defendants in the same jurisdiction,
    and also compare the sentences imposed for commission of the same crime in other jurisdictions.
24  <u>See</u> <u>Taylor</u>, 460 F.3d at 1098 n. 7 (citing <u>Solem</u>, 463 U.S. at 298-300).  However, it has also been
    observed that
25
            consideration of comparative factors may be unnecessary; the
26          <u>Solem</u> court "did not announce a rigid three-part test."  <u>See</u>
            <u>Harmelin</u>, 501 U.S. 957; <u>see also</u> <u>Rummel v. Estelle</u>, 445 U.S. 263,

1    Considering these factors here, the undersigned concludes that petitioner's

2   sentence does not fall within the type of "exceedingly rare" circumstance that would support a

3   finding that his sentence violates the Eighth Amendment.  Petitioner was convicted of two counts

4   of first degree home invasion robbery and one count of first degree burglary, offenses arguably

5   more far serious and more violent than those committed in Andrade and Ewing.  In light of the

6   sentences upheld by the Supreme Court in Andrade and Ewing as discussed above, the sentence

7   imposed in petitioner's case cannot be said to be grossly disproportionate to the severity of the

8   offenses of conviction.  See Solem, 463 U.S. at 1004–05.  The state appellate court's silent

9   rejection of petitioner's Eighth Amendment claim on state habeas corpus (LD 24) was based on a

10   reasonable application of the gross disproportionality standard under well-established federal

11   law.  Accordingly, petitioner is not entitled to federal habeas relief with respect to his claim that

12   his sentence constituted cruel and unusual punishment in violation of the Eighth Amendment.

13                                              CONCLUSION

14    For the reasons set forth above, IT IS HEREBY RECOMMENDED that

15   petitioner's third amended petition for writ of habeas corpus (Dkt. No. 39) be DENIED.

16    These findings and recommendations are submitted to the United States District

17   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

18   days after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21

22    282 (1980) ("Absent a constitutionally imposed uniformity
          inimical to traditional notions of federalism, some State will
23        always bear the distinction of treating particular offenders more
          severely than any other State.").
24

25   Taylor, 460 F.3d at 1098 n. 7.  In light of the finding herein that the sentence imposed in
     petitioner's case cannot be said to be grossly disproportionate to the severity of his offenses, it is
26   not necessary to compare petitioner's sentence to those received by other defendants in other
     jurisdictions.  Id.

shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

In any objections petitioner elects to file, he may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: July 12, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:11
morr1051.157

35